**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**MICHAEL INGRAHAM,**

                **Plaintiff,**              3:13-cv-559
                                                      (GLS)

       v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social
Security,

                **Defendant.**
_____

**APPEARANCES:**                      **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Lachman, Gorton Law Firm        PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN    JEREMY A. LINDEN
United States Attorney             KRISTINA D. COHN
100 South Clinton Street          Special Assistant U.S. Attorneys
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe
Chief Judge**

## **MEMORANDUM-DECISION AND ORDER**

### I. **Introduction**

Plaintiff Michael Ingraham[1] challenges the Commissioner of Social Security's denial of Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Compl., Dkt. No. 1.)[2] After reviewing the administrative record and carefully considering Ingraham's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

### II. **Background**

On June 21, 2010, Ingraham filed an application for SSI under the Social Security Act ("the Act"), alleging disability since December 31, 1995. (Tr.[3] at 45, 100-03.) After his application was denied, (*id.* at 46-49), Ingraham requested a hearing before an Administrative Law Judge (ALJ), which was held on January 31, 2012, (*id.* 30-44, 52-55). On March, 1,

---

[1] Plaintiff's brief refers to plaintiff by his given name, "Michael." (*See generally* Dkt. No. 13.) The court, in keeping with its ordinary practice, will refer to plaintiff by his surname, "Ingraham." Counsel is reminded that, as a basic principle of courtroom decorum, when appearing in this court, all persons should be referred to by their surnames and not by their first or given names.

[2] Because no application for Disability Insurance Benefits (DIB) appears in the record and it is otherwise clear that Ingraham's request for review pertains only to his application for SSI, the court ignores the mistaken reference to DIB in his complaint. (Compl. ¶ 1.)

[3] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 9.)

2012, the ALJ issued an unfavorable decision denying the requested benefits which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*Id.* at 1-7, 10-29.)

Ingraham commenced the present action by filing his complaint on May 14, 2013 wherein he sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 7, 9.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 13, 18.)

### III. Contentions

Ingraham contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 13 at 12-24.) Specifically, Ingraham claims that the ALJ erred in applying the treating physician rule and assessing the opinions of the examining and non-examining medical sources. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and her decision is also supported by substantial evidence. (Dkt. No. 18 at 15-20.)

### IV. Facts

The court adopts the parties' undisputed factual recitations. (Dkt. No.

3

13 at 1-11; Dkt. No. 18 at 1-12.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[4] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Weighing Medical Opinions

According to Ingraham, the ALJ failed to properly evaluate the opinions of treating psychiatrist Mafuzar Rahman, primary care physician Arvin Aranda, and consultative examiner Nathan Hare. (Dkt. No. 13 at 12-24.) Specifically, Ingraham argues that the ALJ failed to properly address the regulatory factors when assigning weight to these opinions, and "cherry picked" the evidence that was supportive of her decision, while

---

[4] 42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims.

4

disregarding the other medical evidence of record. (*Id.*) The court disagrees.

Controlling weight will be given to a treating source's opinion on the nature and severity of a claimant's impairments where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."[5] 20 C.F.R. § 416.927(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). When a treating source's opinion is given less than controlling weight, the ALJ is required to consider the following factors: the length, nature and extent of the treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. 20 C.F.R. § 416.927(c)(2)-(6). The ALJ must provide "'good reasons' for the weight given to the treating source's opinion." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (citations omitted). "Nevertheless, where the evidence of record permits [the court] to glean the rationale of an ALJ's decision," it is not necessary that the ALJ "have mentioned every item of testimony presented to h[er] or have

---

[5] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

5

explained why [s]he considered particular evidence unpersuasive or insufficient to lead h[er] to a conclusion of disability." *Id*. (internal quotations marks and citation omitted).

Here, Dr. Rahman opined that, due to psychotic disorder, NOS, antisocial personality disorder, and a history of alcohol abuse, Ingraham is markedly limited in his ability to appropriately interact with the general public, accept instructions and respond to criticism from supervisors, and get along with coworkers without distracting them. (Tr. at 339-41.) Further, Ingraham had a "medium" limitation in his ability to maintain a schedule and be punctual, sustain a routine, complete a normal work day and week and perform at a consistent pace, respond to ordinary stressors, and respond to changes in a work setting. (*Id.* at 339-40.) In Dr. Rahman's opinion, Ingraham would miss two to three days of work a month, due to his symptoms and treatment. (*Id.* at 340.) The ALJ afforded this opinion "little weight" because it conflicts with the treatment notes of record, which include Global Assessment of Functioning (GAF) scores between fifty and sixty-five,[6] and the lack of clinical findings upon Dr. Rahman's own

---

[6] The GAF Scale "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *Pollard v. Halter*, 377 F.3d 183, 186 n.1 (2d Cir. 2004). A GAF score between forty-one and fifty signals "'[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social,

6

examinations. (*Id.* at 20-21, 231, 285, 312, 314-15, 318, 323-25, 327-28.)

Beginning in November 2010, Dr. Aranda completed a series of paperwork temporarily placing Ingraham out of work, due to anxiety and depression, until he could establish with a psychiatrist and "was somewhat stabilized." (*Id.* at 275-76, 278.) On January 25, 2011, Ingraham requested that Dr. Aranda complete further paperwork excusing him from work, but Dr. Aranda declined, explaining that physically Ingraham is capable of working, and referring him to a psychiatrist to determine his ability to perform the mental functions of work in a social setting. (*Id.* at 275.) The ALJ gave little weight to Dr. Aranda's work excuses because they were not functional assessments, and his treatment notes did not contain any abnormal clinical findings with respect to Ingraham's mental impairments. (*Id.* at 21, 274-80.)

Subsequently, in January 2012, Dr. Hare examined Ingraham and

---

occupational, or school functioning (e.g., no friends, unable to keep a job).'" *Zabala v. Astrue*, 595 F. 3d. 402, 406 n.2 (2d Cir. 2010) (quoting Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., Text Rev. 2000)). A score between fifty-one and sixty indicates moderate symptoms or moderate difficulty in school, work, and social functioning. *See Kohler v. Astrue*, 546 F.3d 260, 262 n.1 (2d Cir. 2008). A score between sixty-one and seventy reflects a person with "'[s]ome mild symptoms (e.g. depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning . . . but [who is] generally functioning pretty well, has some meaningful interpersonal relationships.'" *Id.* at 262 (quoting Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., Text Rev. 2000)). On March 29, 2011, Dr. Rahman assigned Ingraham a GAF score of "65+." (Tr. at 315.)

diagnosed him with panic disorder, depression disorder, NOS, alcohol abuse in remission, and personality disorder with avoidant and sociopathic features. (*Id.* at 281-86.) He assigned Ingraham a GAF of fifty and opined that he has no ability to work with others, complete a normal workday and workweek, get along with co-workers, and deal with normal stress. (*Id.* at 285, 287.) Further, Ingraham was unable to meet competitive standards with respect to making simple decisions, performing at a consistent pace, responding appropriately to changes in a work setting, interacting with the general public, and maintaining socially appropriate behavior. (*Id.* at 287-90.) According to Dr. Hare, Ingraham was also seriously limited in his ability to maintain attention, maintain attendance, keep to a routine, ask for assistance, accept instructions and criticism, and travel in unfamiliar places. (*Id.*) The ALJ gave Dr. Hare's opinion "little weight" because he is not a treating source, there was no reason for Ingraham to present himself honestly to Dr. Hare, and Dr. Hare's opinion was inconsistent with the objective findings of his mental status examination. (*Id.* at 21-23, 282.)

On the other hand, the ALJ gave "some weight" to the opinion of consultative examiner Sara Long, who diagnosed Ingraham with social anxiety and alcohol abuse in early remission. (*Id.* at 22-23, 243-46.) Dr.

8

Long opined that Ingraham could understand and carry out simple instructions, maintain attention and concentration, maintain a schedule, perform complex tasks, make appropriate decisions, relate adequately with others, and adequately manage his stress.  (*Id.* at 245.)  The ALJ explained that Dr. Long's opinion was supported by her mental status examination.  (*Id.* at 22-23, 244-45.)  The ALJ also gave "some weight" to the opinion of non-examining medical consultant E. Kamin who reviewed the medical evidence of record and opined that Ingraham could follow and understand simple instructions and perform simple tasks, but "may do better in a work situation where he does not work with the public or closely with others."  (*Id.* at 23, 263-65.)  The ALJ noted that Dr. Kamin's opinion was consistent with Dr. Long's opinion, Dr. Long's mental status examination, and the objective evidence of record.[7]  (*Id.*)

Ingraham argues that the ALJ erred in failing to address the length and nature of Dr. Rahman's treating relationship, the frequency of his examinations, and his role as a specialist.  (Dkt. No. 13 at 12-13.)  However, after reviewing the administrative record, it is clear that, although

---

[7] Ingraham argues that the ALJ improperly compared Kamin's opinion to that of Dr. Long, as opposed to the record as a whole.  (Dkt. No. 13 at 23-24.)  However, the ALJ actually compared Kamin's opinion to the results of mental status examinations throughout the record, Ingraham's various GAF scores, and the findings of Dr. Long.  (Tr. at 23.)

the ALJ did not methodically discuss each individual factor, she properly applied section 416.927(c), and her assessment of Dr. Rahman's opinion is legally sound. *See* SSR 06-03p, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006) ("Not every factor for weighing opinion evidence will apply in every case."). Specifically, the ALJ concluded that the functional limitations articulated by Dr. Rahman were not supported by findings on mental status examinations and are inconsistent with the claimant's GAF scores, his reported activities and hobbies, and his attempts to find employment. (Tr. at 19-21); *see* 20 C.F.R. § 416.927(c)(3), (4). In reaching that conclusion, the ALJ explicitly referenced 20 C.F.R. § 416.927, as well as relevant social security rulings. (Tr. at 18.) The ALJ also undertook a thorough discussion of the medical and testimonial evidence of record which suggested impairments less severe than those articulated by Dr. Rahman. (*Id*. at 118-21.) Finally, it is evident from the ALJ's direct citation to and discussion of Dr. Rahman's treatment notes, (*id*. at 19-21), that the nature and duration of his treatment relationship with Ingraham were properly considered.

Ingraham also contends that the ALJ erred in failing to discuss Dr. Rahman's diagnoses of psychotic disorder, NOS, and antisocial personality

disorder. (Dkt. No. 13 at 14.) In fact, the ALJ noted that Ingraham

> has been diagnosed with a variety of mental impairments, including adjustment disorder, social anxiety, panic disorder with mild agoraphobia, generalized anxiety disorder, dysthymic disorder, depressive disorder, and personality disorder . . . .
>
> During any given encounter, mental health professionals have given the claimant various diagnoses and characterized his mental impairment in various ways. In determining whether an individual is disabled, what the impairment is called is of no real consequence; rather how a given impairment affects mental functioning is the central inquiry under the Act. By finding the claimant to have a "severe" mental impairment however characterized, all symptoms affecting his mental functioning have been considered.

(Tr. at 16.) Thus, the ALJ continued the sequential analysis and considered Dr. Rahman's treatment notes, which contained his diagnoses, as well as his opinions as to the limitations caused by those diagnoses. (*Id.* at 20-21.) As noted above, the ALJ is not required to "have mentioned every item of testimony presented to h[er] or have explained why [s]he considered particular evidence unpersuasive or insufficient to lead h[er] to a conclusion of disability" when "the evidence of record permits [the court] to glean the rationale of an ALJ's decision." *Petrie*, 412 F. App'x at 407 (internal quotation marks and citation omitted). Further, the omission of an

impairment at step two may be deemed harmless error, particularly where the disability analysis continues and the ALJ later considers the impairment in her residual functional capacity (RFC)[8] determination. *See Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL 398952, at *4 (N.D.N.Y. Feb. 7, 2012); *see also Plante v. Astrue*, No. 2:11-CV-77, 2011 WL 6180049, at *4 (D. Vt. Dec. 13, 2011). Here, where the ALJ thoroughly discussed Dr. Rahman's treatment notes and her reasons for discounting his opinions, this court can determine that substantial evidence in the record supports the ALJ's determination and that the correct legal standard was applied.[9]

---

[8] A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 416.945(a)(3). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

[9] Ingraham argues that Dr. Rahman's opinion and diagnosis of psychotic disorder is supported by the record because on various occasions Ingraham reported auditory hallucinations. (Dkt. No. 13 at 15.) However, no other medical source diagnosed Ingraham with psychotic disorder, and on numerous occasions his treatment notes reflect that he was well groomed and cooperative, with no signs of mania or psychosis, a congruent affect, normal speech, goal directed thought processes, and logical thought content. (Tr. at 178, 180, 184, 229, 231, 244-45, 248, 285, 311-12, 317-18.) Indeed, the mental status examination results from the date of Dr. Rahman's diagnosis of psychotic disorder reflect that, although his mood was depressed and his thought content had some suspiciousness and occasional paranoia, Ingraham was appropriately dressed, with fair to good hygiene and grooming, a congruent affect, normal speech, and logical and goal-directed thought processes. (*Id.* at 314.) Ingraham denied any auditory or visual hallucinations, his intelligence appeared to be average, his memory was intact, and his insight and judgement were "okay and adequate." (*Id.*) On Dr. Rahman's subsequent examinations, Ingraham consistently denied manic, hypomanic, or psychotic symptoms, including hallucinations and paranoia, and his treatment records indicate that Ingraham's symptoms improved and he was dealing better with stress. (*Id.* at 323-25, 328.)

Ingraham cites a letter from Dr. Rahman, written after the ALJ's decision was rendered, which states that "a person with [a GAF score of 65+] can function well in the community if there are no other factors . . . such as [a]ntisocial [p]ersonality [d]isorder." (Tr. at 21, 343.) Dr. Rahman further explained that individuals with antisocial personality disorder have "severe limitations in their ability to obtain and sustain any job. Just to assure safety of others at the work place, [Ingraham] could possibly work in a supportive, closely monitored environment without many interpersonal contacts." (*Id.* at 343.) Although this letter was not contained in the record before the ALJ, the Appeals Council's review is also relevant in determining whether the denial of benefits was supported by substantial evidence. *See Perez*, 77 F.3d at 45 (holding "that the new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision"). However, as the ALJ had before her Dr. Rahman's opinion as to Ingraham's functional limitations, and this letter contains no additional clinical findings to support Dr. Rahman's opinion, it does not add so much to the record as to displace the substantial evidence supporting the ALJ's determination. (Tr. at 343.)

13

Ingraham also argues that the ALJ relied too heavily on his GAF scores and cherry-picked the evidence that supported the ALJ's decision. (Dkt. No. 13 at 16-18.) However, a review of the administrative record reveals that the ALJ's decision to discount the opinions of Drs. Rahman, Hare, and Aranda is supported by the lack of clinical findings, Ingraham's improvement with treatment, his reported daily activities and hobbies,[10] as well as the opinions of Dr. Long, and Kamin. (Tr. at 180, 229, 244-45, 263-64, 275-78, 281, 284, 296, 311-12, 314, 317-18, 323-25, 328.) Importantly, "whether there is substantial evidence supporting the appellant's view is not the question," instead, the court must "decide whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d. Cir. 2013).

With respect to Dr. Aranda, the ALJ correctly noted that his treatment records do not contain any abnormal findings related to Ingraham's mental impairments. (Tr. at 21, 184-85, 274-80.) The "findings" that Ingraham points to are merely his own subjective complaints. (*Id.* at 184; Dkt. No. 13

---

[10] The record indicates that Ingraham is capable of caring for his personal hygiene, cooking, cleaning, doing laundry, shopping, taking public transportation, fishing, mowing the lawn, and shoveling snow. (Tr. at 245, 284, 317, 334.) Further, Ingraham reported that he enjoys camping and sports, and wanted to join a horseshoe league, pursue further education or training opportunities, and obtain employment. (*Id.* at 225, 228, 239, 296, 313, 317.)

14

at 19.) Ingraham also contends that the ALJ erred in finding that Dr. Aranda's opinion was on an issue reserved to the Commissioner, because his opinion that Ingraham was unable to work "until he develop[ed] new coping mechanisms," and had a difficult time concentrating due to exacerbations of anxiety, addressed Ingraham's ability to handle stress and maintain attention and concentration. (Dkt. No 13 at 19; Tr. at 21, 278.) Even if Dr. Aranda's treatment notes reflecting his completion of work excuses on behalf of Ingraham constitute functional assessments, Dr. Aranda ultimately concluded that he was not qualified to render an opinion as to Ingraham's ability to perform the mental functions of work, and deferred that finding to a psychiatrist. (Tr. at 275-76, 278.) Accordingly, the ALJ did not err in granting little weight to Dr. Aranda "temporarily" placing Ingraham out of work. (*Id.* at 275.)

Finally, Ingraham argues that the ALJ erred in discounting Dr. Hare's opinion because the results of the Minnesota Multiphasic Personality Inventory-2 (MMPI-2) indicated a valid profile, the ALJ gave more weight to Dr. Long's opinion, even though both Dr. Long and Dr. Hare are consulting examiners, and the ALJ failed to apply the regulatory factors in assessing Dr. Hare's opinion. (Dkt. No. 13 at 20-23.) As discussed above, the ALJ

15

need not discuss each individual factor to properly apply section 416.927(c). *See* SSR 06-03p, 71 Fed. Reg. at 45,596. Further, Dr. Hare's mental status examination revealed that Ingraham's mood was anxious, his thought content showed excessive worry and "preoccupation with his anxiety episodes," and his attention and concentration and short-term memory were mildly impaired. (Tr. at 282.) However, Ingraham was cooperative, with normal motor behavior, speech, and affect, and average intellectual ability. (*Id.*) Additionally, there was no evidence of psychosis or delusional thinking, his insight was good, his current judgment was fair, and impulse control was good. (*Id.*) The ALJ considered these findings and determined that Ingraham suffered moderate difficulties in social functioning and mild difficulties with regard to concentration, persistence, and pace. (*Id.* at 17-18.) Thus, even if the ALJ erred in considering that, because Dr. Hare was not a treating physician, "[t]here was no reason for [Ingraham] to present himself honestly," (*Id.* at 22), the ALJ provided sufficient reasons for discounting Dr. Hare's opinion, and her decision to do so is supported by substantial evidence. Although Ingraham argues that the ALJ should have treated the opinions of Drs. Long and Hare similarly because they are both consultative examiners, (Dkt. No. 13 at 21), the ALJ

16

afforded these opinions different weight based on the extent to which they relied on Ingraham's subjective complaints, (Tr. at 22-23). Notably, the ALJ determined that Ingraham was not entirely credible. (*Id.* at 19.)

B. **Remaining Findings and Conclusions**

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Ingraham's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

July 3, 2014
Albany, New York

*Gary L. Sharpe*
Chief Judge
U.S. District Court

17